**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAURIE HAINES and GARY HAINES,** | : | |
| **individually and as parents and natural** | : | |
| **guardians of B.H.,** | : | |
| **Plaintiffs** | : | **Civil Action No. 1:07-cv-00851** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **FORBES ROAD SCHOOL DISTRICT,** | : | |
| **and LISA DAVIES, as the** | : | |
| **Administratrix and Personal** | : | |
| **Representative of the Estate of David** | : | |
| **Davies,** | : | |
| **Defendants** | : | |
| | : | |
| **. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .** | : | |
| | : | |
| **PATIENCE WHITMAN,** | : | |
| **Plaintiff** | : | |
| | : | **Civil Action No. 1:07-cv-00852** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **FORBES ROAD SCHOOL DISTRICT,** | : | |
| **and LISA DAVIES, as the** | : | |
| **Administratrix and Personal** | : | |
| **Representative of the Estate of David** | : | |
| **Davies,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court is Plaintiff Patience Whitman's motion for attorney's fees. (Doc. No. 147.) In her motion, Plaintiff argues that, as a prevailing party in her § 1983 claim, she is entitled to attorney's fees. Defendant agrees that Plaintiff was a prevailing party, but argues that her nominal victory does not entitle her to attorney's fees. Alternatively, Defendant argues that if Plaintiff is entitled to some attorney's fees, the amount she requests should be reduced. For the reasons that follow, the Court finds that Plaintiff's victory was more than *de minimis* and will

award her attorney's fees in the amount of $46,410.00 plus $5,143.43 in costs.

## I.   FACTUAL BACKGROUND

Plaintiff Patience Whitman was a student at Forbes Road Junior/Senior High School. In this lawsuit, she alleges that she was sexually assaulted by her former teacher, David Davies, in March of 2006. Specifically, she alleged that when she entered his classroom to get a piece of candy, Davies brushed his hand across her chest and felt her leg, up her skirt to her buttocks, to "see if she shaved." Immediately after the incident, Plaintiff reported Davies' misconduct to the school secretary, and Davies was suspended from teaching. When additional allegations against Davies were made by another student at the school,[1] a criminal investigation began. The criminal investigation was halted, however, when Davies committed suicide in April of 2007.

On May 9, 2007, Plaintiff, represented by attorney Spero Lappas, initiated this litigation against the Forbes Road School District ("school district"), alleging violations of her civil right to bodily integrity pursuant to § 1983 and the state law torts of assault and battery. The Davies Estate was joined in the action on June 29, 2007. The case was tried to a jury on February 10, 2009, with the jury returning a verdict in favor of Plaintiff on her § 1983 claim and the battery claim, but in favor of Defendant on the assault claim. (Doc. No. 144 at 3, 7.) The jury also found that Davies' actions were outrageous and that he acted wantonly and maliciously in violating Plaintiff's rights, yet the jury declined to award Plaintiff punitive damages for either claim. As a result, Plaintiff was awarded only nominal damages of $1.00. (Doc. No. 144 at 4, 8.)

_____

[1]Prior to trial, this case was consolidated with the case of <u>B.H. v. Lisa Davies Black</u>. (Doc. No. 115.) Though the time and extent of the allegations differed, both Plaintiffs, minor students at Forbes Road Junior/Senior High School, alleged that David Davies sexually assaulted them.

## II. DISCUSSION

Plaintiff moves this Court to award attorney's fees pursuant to 42 U.S.C. § 1988 because she was the prevailing party at trial in her § 1983 claim against Defendant the Estate of David Davies ("Defendant" or "Davies Estate"). Plaintiff's counsel asserts that $108,758.00 is the reasonable amount of attorney's fees for the work done on this case by an attorney of his skill and experience. Defendant disputes this amount, first challenging whether Plaintiff is entitled to any award at all under the Supreme Court's holding in <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992) and, alternatively, challenging the contingency multiplier and the inclusion of hours spent on aspects of the litigation that did not result in victory against Defendant or which advanced the litigation on behalf of both Plaintiff Whitman and Co-Plaintiff B.H.

Title 42 U.S.C. § 1988 allows a district court discretion to award reasonable attorney's fees to the prevailing party in litigation brought pursuant to § 1983. 42 U.S.C. § 1988. In considering a motion for attorney's fees, a district court must first determine whether a party is a "prevailing party." <u>Farrar v. Hobby</u>, 506 U.S. 103, 109 (1992) ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988."). Discerning whether a party is a prevailing party does not end the matter, however, because if the prevailing party's victory is *de minimis*, an award of attorney's fees may not be reasonable. <u>Id.</u> at 114-15. Here, there is no dispute that Plaintiff Whitman is a prevailing party on her § 1983 claim. Because she won only nominal damages, however, the Court must first determine whether her victory was more than *de minimis*. If so, the Court is then charged with determining what amount of attorney's fees is reasonable to grant a plaintiff who was awarded only nominal damages on a § 1983 claim alleging a violation of her Fourteenth Amendment right to bodily integrity by a public school

teacher.

### A. Whether Any Fee Award Is Reasonable Given Plaintiff's Award of Nominal Damages

In <u>Farrar</u>, the Supreme Court stated that attorney's fees should not be awarded "when the plaintiff's success is purely technical or *de minimis*," but also clarified that an award of nominal damages does not preclude recovery of attorney's fees, *per se*. <u>Farrar</u>, 506 U.S. at 117 (O'Connor, J., concurring); <u>see</u> <u>also</u>, <u>Farrar</u>, 506 U.S. at 115 ("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all."). Though the majority opinion provides little guidance on how a court should determine whether a victory is more than technical or *de minimis*, it does state that "the degree of the success obtained" is "the most critical factor" in determining whether a fee award is reasonable. <u>Farrar</u>, 506 U.S. at 114.

Justice O'Connor, concurring in the opinion,[2] explained that courts should look to three factors to determine whether a plaintiff's victory is substantial enough to merit any attorney's fee award at all: 1) the extent of the relief won as compared to the amount sought, 2) the significance of the legal issue on which the plaintiff prevailed, and 3) the public purpose served by the

---

[2] Though a concurring opinion, Justice O'Connor's vote was necessary to produce a majority ruling. Many courts, and both parties in this case, look to the factors she set forth in her concurrence in <u>Farrar</u> to guide the inquiry into whether a nominal damages award is sufficient to entitle a plaintiff to any attorney's fee award at all. <u>See</u>, <u>e.g.</u>, <u>Gudenkauf v. Stauffer Commc'ns, Inc.</u>, 158 F.3d 1074, 1078 (10th Cir. 1998) ("Justice O'Connor's special concurrence is significant in this regard because her vote made the majority and thus constitutes the opinion of the court on what constitutes a "purely technical" victory."); <u>Styers v. Pennsylvania</u>, 621 F. Supp. 2d 239, 241 n.2 (M.D. Pa. 2008) ("Justice O'Connor joined the opinion in <u>Farrar</u> but authored an influential concurrence that lower courts have found helpful in assessing whether an attorney's fee is appropriate if the prevailing party only recovers nominal damages." (Internal citations omitted)).

lawsuit. Farrar, 506 U.S. at 120-22 (O'Connor, J., concurring). All factors considered, the amount awarded "should reflect the extent to which the litigant was successful." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1043 (3d Cir. 1996) (citing Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)). The Court turns now to an examination of these factors to determine whether Plaintiff Whitman's victory was more than *de minimis*, and therefore entitles her to a collection of reasonable attorney's fees.

### 1. Degree of Success Obtained and Extent of Relief Won Compared to the Amount Sought

Plaintiff Whitman won a jury verdict in her favor on her principle claim—the § 1983 claim. Throughout the case, she alleged that her former school teacher, David Davies, violated her right to bodily integrity. While some of her testimony supported the damages aspect of her claim by relating to the suffering and mental anguish caused by the violation of a trusted and popular teacher, the clear thrust of the evidence she presented was on the establishment of the violation—that her school teacher violated her constitutional rights when he touched her leg and reached his hand up her skirt "to see if she shaved." The modest amount of damages sought by Plaintiff in this case, $50,000, and the efficiency of the two-day trial buttress Plaintiff's assertion that her primary goal in this litigation was the affirmation that she was wronged, not the collection of monetary damages. In this way, her case is distinguishable from Farrar, where the drawn-out litigation and $17 million demand suggested to the Supreme Court that Farrar's primary goal in bringing the litigation was recovery of a monetary award. Farrar, 506 U.S. at 106-07.

Not only did the jury agree that Davies violated Plaintiff's right to bodily integrity, the jury also found that Davies acted wantonly, maliciously, and outrageously in violating that right.

The finding of wantonness and maliciousness indicates that the jury found the violation to be a serious one. It also suggests that the decision not to award punitive damages is more likely a result of the jury's reluctance to punish the Davies Estate than a determination that Plaintiff's victory was *de minimis*.

Moreover, Plaintiff's reputation in the community was redeemed by her victory in the case, and she gained assurance for all female students that a male teacher may not touch a student's bare leg, buttocks, and chest, under any justification. While the amount of relief awarded to Plaintiff was less than the amount she sought, her nominal damages award does not imply a nominal victory in this case. The Court finds that Plaintiff here gained more than "the moral satisfaction of knowing that a federal court concluded that [her] rights had been violated in some unspecified way." <u>Farrar</u>, 506 U.S. at 114. This factor weighs in favor of awarding attorney's fees.

## 2. Significance of the Legal Issue on Which Plaintiff Prevailed

The next factor for the Court's consideration is the significance of the legal issue on which Plaintiff prevailed. Courts have assessed this factor in one of two very different ways: either by examining whether the legal issue on which the plaintiff prevailed was a central aspect of her entire claim, or by examining the importance of the legal right upon which the plaintiff prevailed as compared to other legal rights generally. <u>See</u> <u>Hare v. Potter</u>, 549 F. Supp. 2d 698, 706-07 (E.D. Pa. 2008) (analyzing the two divergent interpretations of this factor); <u>Phelps v. Hamilton</u>, 120 F.3d 1126, 1132 (10th Cir. 1997) (interpreting the second O'Connor factor as questioning whether the issue on which the plaintiff was the prevailing party was significant and central to the remainder of the claim). Under either interpretation, this factor also weighs in favor

of Plaintiff.

It is clear that the civil rights claim was the focal point of the litigation. As stated in the preceding section, Plaintiff's § 1983 claim alleging a Fourteenth Amendment violation was the central aspect of this litigation; the only other claims brought to trial were the state law claims of assault and battery, which counsel barely discussed either at trial or in the motions leading up to trial. It is equally clear that the civil right asserted by Plaintiff is important as compared to other civil rights. The Third Circuit Court of Appeals has stated that a student's right to bodily integrity is "closely analogous" to the "right implicated by corporal punishment in schools [and] . . . among the historic liberties protected by the Due Process Clause." See, Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726-27 (3d Cir. 1989) (internal citations omitted). Thus, under either analysis, this factor weighs in favor of an award of attorney's fees.

### 3. Public Purpose Served by the Litigation

The third factor requires the Court to consider whether Plaintiff's case achieved a significant public purpose. The Court finds that this litigation served the significant public purpose of protecting other students' rights by deterring like conduct by David Davies against other students, and by other teachers against their students. Moreover, the facts of this case indicate that Plaintiff Whitman's willingness to come forward with her allegations against a popular teacher gave another student, B.H., the courage to come forward with her allegations of sexual abuse. Certainly, the knowledge of this lawsuit will inspire victims of similar abuse to come forward. This lawsuit also should have encouraged the school district to modernize its reporting policy for cases of teacher-student harassment, thereby further deterring misconduct and encouraging reporting by victims.

Additionally, Plaintiff was ostracized from the community for her allegations and forced to take a year off from school; the favorable verdict in this lawsuit undoubtedly achieved the public purpose of rebuilding her reputation which had been tarnished because of her allegations against a popular community member. (Doc. 151-2 at 1-2.)

Lastly, and perhaps most importantly, this civil litigation also served to vindicate Plaintiff and provide closure. David Davies' suicide prevented Plaintiff from receiving the closure a criminal prosecution provides to victims. This civil action was Plaintiff's only means to receive vindication for the violation against her. This factor weighs in favor of an attorney's fee award, as well.

In consideration of all the facts and factors mentioned above, the Court finds that Plaintiff's victory is more than *de minimis,* and therefore she is entitled to reasonable attorney's fees. Having determined that Plaintiff is entitled to an award of attorney's fees for her success in the litigation, the Court now turns to the question of what fee is reasonable under the circumstances.

**B.      Reasonableness of the Fee Requested**

The starting point for determining a reasonable fee award is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The fee applicant bears the burden of demonstrating that the hourly rate and number of hours expended on the litigation are reasonable. Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). Once the fee applicant's burden is satisfied, this amount, known as the "lodestar," is presumed to be reasonable, and "the burden shifts to the party opposing the fee award to challenge the reasonableness." Rode v. Dellarciprete, 892 F.2d

1177, 1183 (3d Cir. 1990); <u>Pennsylvania v. Delaware Valley Citizens' Counsel</u>, 478 U.S. 546, 565 (1986). If the lodestar is challenged, the Court should engage in a "thorough and searching analysis" to reduce any hours the opponent of the fee award shows to be "excessive, redundant, or otherwise unnecessary." <u>Hensley</u>, 461 U.S. at 434[3]; <u>Public Interest Research Group of New Jersey, Inc. v. Windall</u>, 51 F.3d 1179, 1190 (3d Cir. 1995). The Court should not, however, decrease the fee award for reasons that have not been raised by the opposing party. <u>Rode</u>, 892 F.2d at 1183; <u>Interfaith Community Org. v. Honeywell Intern., Inc.</u>, 426 F.3d 694, 711 (3d Cir. 2005).

### 1.     Reasonable Hourly Rate

An hourly rate is reasonable if the fee applicant demonstrates by evidence, in addition to the fee applicant's own affidavit, that the suggested rate is comparable to the current "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Maldonado</u>, 256 F.3d at 184 (internal citations omitted); <u>Interfaith Community Org.</u>, 426 F.3d at 708. Although the hourly rate was initially contested, the parties have stipulated that $280.00 per hour is a reasonable rate for an attorney of Mr. Lappas' skill and

---

[3]Among the considerations that would result in a fee reduction are the following twelve factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Hensley</u>, 461 U.S. at 430 n.3 citing <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).

experience in the field of civil rights litigation in the Harrisburg community.[4] (Doc. No. 161.)

## 2. Contingency Multiplier

Plaintiff argues that a contingency multiplier of 1.3 should be applied to the lodestar in this case to account for the difficulty Plaintiff would have had in finding other counsel to take her case had Mr. Lappas not agreed to represent her. (Doc. No. 151-3 ¶ 13.) Defendant challenges the assertion that a contingency multiplier is warranted in this case.

A fee applicant must overcome a difficult burden to be awarded a contingency multiplier. She must show the following four elements weigh in favor of an enhancement to the lodestar: "(1) how the market treats contingency fee cases as a class differently from hourly fee cases; (2) the degree to which the relevant market compensates for contingency; (3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and in its case; and (4) that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." Rode, 892 F.2d at 1184 (internal citations omitted). Plaintiff has not met this burden; her affidavits and briefs do not even mention the first three factors. The "significant burden" and "stringent requirements" on Plaintiff to establish the propriety of a contingency multiplier have not been met, thus the request for a contingency multiplier will be denied. Id.

## 3. Reasonable Hours Expended in the Litigation

---

[4]When the rate was contested, the Court ordered a hearing to determine a reasonable rate as required by the Third Circuit. See Smith v. Philadelphia Housing Authority, 107 F.3d 223, 225 ("If hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates."). Prior to the hearing, however, the parties filed a stipulation indicating their agreement that $280.00 is a reasonable hourly rate.

Plaintiff has submitted a fee petition indicating a total time expenditure of 263.4 hours on the case. (Doc. No. 151-3 at 42.) Defendant disputes several specific aspects of that time allotment, primarily asserting that the fee award should not include time spent litigating Plaintiff's claim against the school district or time expended in benefit of Co-Plaintiff B.H.'s case, but also arguing that the fee petition is overly vague and includes several entries that are unreasonable for various reasons.

In considering these arguments, the Court also emphasizes its duty to only award fees that are properly billable to a client. Windall, 51 F.3d at 1188 ("Hours that would not generally be billed to one's own client are not properly billed to an adversary.") (quoting Hensley, 461 U.S. at 434 ). A fee petitioner should exercise "billing judgment," and should not simply take advantage of every possible opportunity to tax the opposing party. Washington, 89 F.3d at 1040 (quoting Hensley, 461 U.S. at 434). A district court should not include hours that are excessive, redundant, or otherwise unnecessary to the litigation. Rode, 892 F.2d at 1177 (3d Cir. 1990). With these principles in mind, the Court will now examine Defendant's specific arguments for reduction of Plaintiff's fee award.

### a.    Overly Vague

First, Defendant argues that numerous entries on Plaintiff's fee petition should be excluded because they are not sufficiently specific for the Court to determine their reasonableness. Contrary to Defendant's assertion, however, the information submitted in the fee petition is sufficiently precise to meet the particularity requirements set forth by the Third Circuit Court of Appeals. See Keenan v. City of Philadelphia, 983 F.2d 459, 473 (3d Cir. 1992) (finding that cumulative monthly summaries of hours spent was insufficiently specific but that

summaries of counsel's time chronologically organized by date, time consumed, and general description of the activities was adequately specific); Rode, 892 F.2d at 1190 ("[I]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted."). A fee petition need only provide "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations." Rode, 892 F.2d at 1190.

Here, Plaintiff's fee petition states times spent (meted out to the nearest tenth of an hour), the date, the type of activity involved, and in cases of conference or telephone calls, the person(s) to whom the activity was directed. Defendant cites to no case requiring that each time submission include the precise legal topic addressed in the particular activity. In fact, the Third Circuit explicitly requires only that the entries provide "enough information as to what hours were devoted to various activities and by whom for the district court to determine if the claimed fees are reasonable." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1038 (3d Cir. 1996) (vacating district court's determination that the fee petitioner's hours were inadequately documented). The fee petition, along with the Court's knowledge of the case and access to the docket, allows the Court to determine whether the documented hours were reasonable for this case. The entries are not overly vague and need not, as a whole, be more specific for the Court to determine their reasonableness.

### b.     Hours Spent Litigating Claims Against the School District

Defendant contends that many hours proposed in Plaintiff's fee petition should be excluded because they were spent in furtherance of litigation against the school district rather than against the Davies Estate. To wit, Defendant objects to the inclusion of the hours spent prior

to its being joined as a party and to the hours spent litigating motions filed by the school district.

Defendant is correct that the fee-shifting provisions were not designed to "compensate a plaintiff for attorney hours devoted to the case against other defendants . . . who are found not to be liable." Rode, 892 F.2d at 1185 (quoting Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208, 1214 (3d Cir. 1978)). Plaintiff's counsel has the responsibility of submitting a fee petition that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Washington v. Phila Cty. Ct of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996). Yet, in cases where the non-prevailing claims involve a "common core of facts" or concern legal theories related to the prevailing claim, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435. Thus, hours "'fairly devoted' to one defendant that also support the claims against other defendants are compensable." Rode, 892 F.2d at 1185 (quoting Baughman, 583 F.2d at 1214).

Although Plaintiff did not win her claim against the school district, the majority of the work on that claim cannot be excised from the fee award because it significantly overlaps and intertwines with the litigation against the Davies Estate. Both the claim against the school district and the claim against the Davies Estate arise solely from Plaintiff's allegation that David Davies sexually assaulted her; investigation and research into one of the claims automatically bolstered the other. Although the initial investigations, research, and client consultations comprising the first 18 hours of Plaintiff's fee petition occurred when the school district was the only named defendant, the fact that both claims required proof of the underlying assault by Davies to be successful at trial convinces this Court that these initial hours were foundational both to the

claims against the school district and against Defendant Davies Estate. Preliminary contact with Plaintiff and her family, initial research into the law to support her claims, and contact with the school district to investigate the plausibility of Plaintiff's allegations were necessary to the claim against the Davies Estate as well as the claim against the school district. The Court finds that the interrelated nature of the claims against the two defendants dictates that the initial, investigative hours were "useful and of the type ordinarily necessary in pursuing the litigation" against the Davies Estate. Windall, 51 F.3d at 1189 (internal citations omitted).

The only exception the Court finds to the interrelated and thus inseparable nature of the claims is the time Plaintiff's counsel spent litigating the school district's summary judgment motion.[5] The school district's summary judgment motion pertained to the narrow question of whether the school district failed to properly train its employees to identify and report teacher-student sexual harassment. Although investigation into administrators' and other teachers' knowledge about David Davies' reputation with the students would have been beneficial and necessary to both claims because such investigation may have uncovered additional evidence of

---

[5]Defendant also argues that time spent on the school district's motion in limine should be excluded as irrelevant to Plaintiff's case against the Davies Estate. The Court disagrees. The Court finds that work on both motions in limine furthered Plaintiff's case against the Davies Estate because evidence excluded by the school district would have been as detrimental to Defendant Davies Estate as to the school district, had it been admissible at trial.

Specifically, the school district sought to exclude evidence that Plaintiff had reported that Mr. Davies made inappropriate comments to her years before the conduct at issue. Presentation of this evidence at trial would have bolstered her claim of the Davies Estate's liability as well as the school district's liability. This reasoning also applies to the school district's motion to preclude evidence of rumors regarding Mr. Davies' behavior toward female students, the hearsay statements in the police report, and the other written statements: admission of any of these statements would have advanced Plaintiff's case against the Davies Estate as well as against the school district by suggesting to the jury that Plaintiff's claim against Mr. Davies was not isolated misconduct.

Davies' liability, the hours spent researching the law on "failure to train" liability and writing a brief on that issue were only beneficial to the claim against the school district. The Court agrees with Defendant that time Plaintiff's counsel spent working on the school district's summary judgment motion is "sufficiently separable from the rest of the litigation to warrant deduction." Rode, 892 F.2d at 1185-86 (affirming district court's exclusion of hours spent litigating unsuccessful motions that did not further successful claims).

Plaintiff's fee petition states that 32.4 hours were spent receiving, reviewing, writing, and researching both the school district's and the Davies Estate's summary judgment motions. This time includes a telephone call with Defendant's counsel and work contributing to the resolution of the Davies Estate's summary judgment motion by stipulation. (Doc. No. 151-3, 40.) The Court finds that 4.0 hours is the maximum number of hours reasonable for counsel to have read, reviewed, and researched Defendant Davies Estate's motion for partial summary judgment and formulated and agreed to stipulations with Defense counsel. Thus 28.4 hours, which the Court calculates as time spent on the school district's motion for summary judgment or time unreasonably spent on Defendant Davies Estate's stipulations and motion for partial summary judgment, will be excluded from the fee award.

### c.       Time Claimed for Consultations with other Attorneys

Defendant also asserts that hours spent discussing the case with other attorneys who "did not participate in this case" should be stricken. (Doc. 154-6 at 2, 3.) Defendant's argument is unpersuasive. Attorney Lappas indicates he consulted with another attorney, Yvonne Husic, twice as the case proceeded. Attorney Lappas describes attorney Husic as "an expert in school law and practices." (Doc. No. 158 at 6.) Consulting with another experienced attorney on a

matter is certainly not *per se* unreasonable. <u>See</u> <u>Blum v. Witco Chem. Corp.</u>, 829 F.2d 367, 378-79 (3d Cir. 1987) (upholding district court's reimbursement of attorney's fees for hours spent consulting other lawyers but encouraging courts to carefully scrutinize such time). Moreover, attorney Lappas only submitted consultation time of .6 hours on September 18, 2007, and .2 hours on December 6, 2007, together totaling only .8 hours. Defendant has given the Court no reason to find that .8 hours of consulting with another attorney is unreasonable or excessive. Accordingly, the Court will not reduce the attorney's fee award on this basis.

### d.    Time Claimed for Writing Subpoenas

Defendant argues that time spent redrafting subpoenas "could be an administrative task not appropriately charged by a senior attorney and should be stricken." (Doc. 154-6 at 3, 4.) In <u>In re Busy Beaver Bldg. Centers, Inc.</u>, 19 F.3d 833, 849 (3d Cir. 1994), the Third Circuit Court of Appeals stated that "the type of service affects the reasonableness of the rate of compensation sought by a professional," implying that, while services necessary for advancement of the prevailing party's litigation are recoverable in an award for attorney's fees, not all services rendered are compensable at the same rate. <u>See</u> <u>also</u>, <u>Missouri v. Jenkins</u>, 491 U.S. 274 n.10 (1989) (finding that, while non-legal work can be reimbursed under § 1988, non-legal work "command[s] a lesser rate. Its dollar value is not enhanced just because a lawyer does it." (Internal citations omitted)) <u>Halderman v. Pennhurst State Sch. & Hosp.</u>, 49 F.3d 939, 942 (3d Cir. 1995) (finding it inappropriate to "use [] highly skilled and highly priced talent for matters easily delegable to non-professionals"); <u>Ursic v. Bethelhem Mines</u>, 719 F.2d 670, 677 (3d Cir. 1983) ("Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates."). Plaintiff has not demonstrated that the work done by attorney Lappas on the

subpoenas is entitled to reimbursement at the rate of a senior attorney. Her brief simply states that "the drafting and re-drafting of subpoenas is an important matter, and the careful preparation of those subpoenas is a task that is sometimes undertaken by attorneys." (Doc. No. 158 at 6.) The Court finds this support insufficient, and thus the Court will exclude from its calculation of a reasonable fee award the hours spent preparing subpoenas.

Unfortunately, it is unclear how much time was spent drafting and re-drafting subpoenas. Plaintiff submits an entry on January 31, 2008, stating that 1.0 hour was spent on "Redraft[ing] Subpoenas, Notices, Letter to Counsel." (Doc. No. 151-3 at 38.) Plaintiff also submits that 7.0 hours were spent on January 27, 2009, on "Trial Memo, Points for Charge, Verdict Slips, re-Do Subpoenas, Telephone Call with Olsen's Office." (Doc. No. 151-3 at 41.) Though Defendant only challenges the portion of these two entries spent on writing the subpoenas, Plaintiff does not designate the amount of time devoted to the subpoenas in either entry.[6] Because Plaintiff has not specified the time spent drafting and redrafting subpoenas, she has not met her burden of submitting time entries that are sufficiently specific for the Court to determine their reasonableness. See Washington, 89 F.3d at 1037 ("Specificity should only be required to the extent necessary for the district court to determine if the hours claimed are reasonable for the work performed." (Internal citations omitted)). Accordingly, the Court reduces the fee award by the full 8 hours of these submissions.

### e.    Time Claimed for Amended Complaint

---

[6]The Court notes that Plaintiff had an opportunity in her reply brief to make such delineation of time in response to Defendant's challenge, or to suggest a more reasonable rate for such work. She chose not to do so, instead arguing only that preparation of subpoenas was a task that could be performed by senior attorneys.

Defendant also contends that, in light of the minimal changes made to the amended complaint, Plaintiff's claim for 2.5 hours in preparing the amended complaint is unreasonable and should be stricken. (Doc. 154-6 at 2.) Attorney Lappas argues that such expenditure was not unreasonable because it entailed "careful review of the Complaint already filed, required a review of potential claims against the Davies estate, and required putting the final product in good form to be filed." (Doc. No. 158 at 6.)

The amended complaint incorporated the original complaint almost entirely, but it also included approximately fourteen new paragraphs. (Doc. No. 1 compared to Doc. No. 8.) Many of these paragraphs were boilerplate, stating only that "all other paragraphs of this complaint are incorporated into this count by reference thereto" and "WHEREFORE, the Plaintiffs request that this Court enter judgment on their behalf and against this Defendant for damages in an amount to be determined at trial, plus costs of litigation, plus reasonable attorney's fees." (Doc. No. 8 at ¶¶ 43-50.)Yet, as unspecific as these additional claims may be, counsel was obligated under Federal Rule of Civil Procedure 11 to research the validity of these additions and the propriety of bringing claims against Lisa Davies Black on behalf of the Davies Estate in light of the accused's untimely death. The Court finds that the 2.5 hours spent amending the complaint were not unreasonable.

### f. Witness Fees for Witnesses Who Did Not Testify at Trial

Defendant next argues that Plaintiff seeks reimbursement for $888.65 in witness fees for witnesses who did not testify at trial. In <u>EEOC v. Federal Express Corp.</u>, 537 F. Supp. 2d 700, 724 (M.D. Pa. 2005), this Court held that fees involved with serving a witness who ultimately failed to appear at trial was not recoverable. Though this case differs in that the failure of the

witnesses to testify was the result of a tactical decision not to present their testimony, the Court agrees that Defendant should not bear the cost of paying a witness fee for a witness who did not testify at trial. The Court finds that the costs should be reduced by $888.65 as requested by Defendant.

### g. Time Spent on Attorney's Fees brief

Defendant also points out that the fee petition claims 9.1 hours spent on Plaintiff's brief in support of attorney's fees from March 3, 2009, through March 23, 2009, and then claims 2.0 hours spent on "motion for attorney's fees" occurring after that, on March 24, 2009. (Doc. No. 154-6 at 4.) Defendant does not contend that the total time claimed for the attorney's fees motion, 13.1 hours, is unreasonable, but instead quibbles with the fact the entry stating "motion for attorney's fees" was dated March 24, 2009, when the motion was filed February 26, 2009. (Doc. No. 154-6 at 4.) Looking at the petition, however, it is clear that attorney Lappas was working on the brief in support of the motion for attorney's fees on March 24, 2009, rather than the actual motion since the brief was filed only a few days later, on March 27, 2009, and the second time entry for that day indicates that 2.0 more hours were spent drafting "affidavits and exhibits to Brief." (Doc. No. 151-3 at 42.) Common sense compels the conclusion that counsel intended to indicate he was working on the brief in support of the motion for attorney's fees, as he had been the previous three business days, but simply wrote "motion for attorney's fees" instead. (Doc. No. 151-3 at 42.) Moreover, the intricacy and complexity of this area of the law suggests to the Court that a total claimed expenditure of 13.1 hours on this motion for attorney's fees, including the brief in support and compilation of exhibits, is imminently reasonable. The Court will not reduce the attorney's fee award on this basis.

### 4.    Overlap with B.H.'s Case

Defendant devotes much of its brief to the argument that the overall fee award should be reduced to avoid duplicative billing for work benefitting both Plaintiff Whitman and Co-Plaintiff B.H. when only Plaintiff Whitman is entitled to an award of attorney's fees. Defendant argues that because attorney Lappas' work benefitted both Plaintiff Whitman and Co-Plaintiff B.H., and he could not ethically bill either client for the entirety of the work done, neither should the fee award encompass the work done on both cases. Defendant proposes that the Court divide the attorney's fees and costs in half to adjust for victory by only one of the two Plaintiffs. Defendant supports this proposition with two unreported cases from the Middle District of Pennsylvania. Lohman v. Duryea Borough, 2008 U.S. Dist. Lexis 57981, 2008 WL 2951070 (M.D. Pa. July 30, 2008); Guarnieri v. Duryea Borough, 2008 U.S. Dist. Lexis 80447, 2008 WL 4541999 (M.D. Pa. Oct. 9, 2008).

In Lohman and Guarnieri, cases that were related but not consolidated, both plaintiffs were prevailing parties seeking attorney's fees. The Court divided the fee award in two so that attorney's fees could be awarded to each plaintiff without allowing the attorney who worked on both cases to receive the windfall of a double fee award. Id. The concerns of duplicating fees and a windfall for Plaintiff's attorney do not apply to the facts of this case because Co-Plaintiff B.H. was not a prevailing party, and thus will not receive any fee award. Moreover, a purely mathematical comparison between the percentage of prevailing plaintiffs and the percentage of the lodestar awarded would likely run afoul of the Third Circuit's rejection of reductions based solely on mathematical proportions.

In Windall, the Third Circuit rejected a "simple, mechanistic reduction based solely on

the ratio of successful to unsuccessful issues."Windall, 51 F.3d at 1190; see also, Hensley, 461 U.S. at 435 n.11 (rejecting a purely mathematical comparison between the number of claims pressed and the number of claims prevailed upon to determine a fee award because it "provides little aid in determining what is a reasonable fee in light of all the relevant factors"). The court also overruled a district court's attempt to determine a fee award by creating a ratio between the amount of damages recovered and the fee award. Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1040 (3d Cir. 1996) (rejecting the district court's use of "some ratio between the fees and the damages awarded" though finding the amount of damages relevant to the fee consideration); Davis v. Southeastern Pennsylvania Transportation Authority, 924 F.2d 51, 54 (3d Cir. 1991) ("[W]e re-affirm our holdings . . . that it is not permissible for a trial judge to make a reduction in the attorney's fee award solely on the basis of proportionality." (Internal citations omitted)). The rationale applied in these cases—that a strict mathematical approach does not always reflect a reasonable judgment—applies equally to the one at bar. For these reasons, the Court declines Defendant's invitation to flatly use the ratio of prevailing to non-prevailing plaintiffs to determine a reasonable fee award.

Moreover, the Court agrees with Plaintiff Whitman's contention that work done in support of Co-Plaintiff B.H.'s case was intertwined with and would have been equally necessary for Plaintiff Whitman's case had counsel been litigating the claim solely on her behalf. Attorney Lappas would have been a derelict advocate had he not investigated and attempted to raise B.H.'s allegations of sexual assault by David Davies as a means to support Plaintiff Whitman's allegation even if B.H. did not bring an independent claim. Attorney Lappas also would have needed to depose other teachers at the school to determine whether they had information on the

claim brought by Plaintiff Whitman regardless of whether he was also working on behalf of B.H. Thus he also would have had to order deposition transcripts of each deposition, prepare for each deposition, and travel to that deposition if he were litigating the claims solely on Plaintiff Whitman's behalf. Moreover, both claims involved the same legal reasoning and theories. A simple division of the costs would not result in a reasonable award for counsel's work on Plaintiff Whitman's case.

To the extent the more complicated nature of Plaintiff B.H.'s claims required counsel to expend time and effort that, while related and intertwined with Plaintiff Whitman's case, results in a fee award that is unreasonable for the singular claim of abuse against the single defendant raised by Plaintiff Whitman, the Court will make such adjustment after the lodestar has been calculated, pursuant to Hensley. Hensley, 461 U.S. at 434 ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"); See also, McKenna v. City of Philadelphia, 582 F.3d 447 (3d Cir. 2009) (affirming district court's reduction of the lodestar to arrive at reasonable fee where multiple plaintiffs went to trial each on multiple claims but recovery was limited to one claim for one plaintiff). Because the Court cannot clearly distinguish particular hours spent on claims for Co-Plaintiff B.H. that did not also support the litigation on behalf of Plaintiff Whitman, the Court declines to reduce the lodestar on this basis. The Court does, however, deduct the 6 hours Plaintiff concedes was an inadvertent "double billing."

### 5. Consideration of Settlement Negotiations

The Third Circuit has held that "settlement negotiations *may* be relevant in measuring

success," but are, at most, "only one factor to be considered in the award of fees." Lohman v. Duryea Borough, 574 F.3d 163, 169 (3d Cir. 2009). A district court "is also free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages." Id.

In this case, the rejection of the settlement offer does not bear on Plaintiff's success because Plaintiff's counsel consistently rejected the offer as unethical without regard to its amount. Plaintiff's counsel stated that he believed the "all-or-nothing" aspect of the settlement offer to be unethical considering his representation of two autonomous clients. Regardless of whether attorney Lappas' sentiment is accurate, his standpoint indicates that evidence of the rejected settlement offer has little or no reflection of the damages Plaintiff actually sought to win in this case. For this reason, the Court declines to use settlement information in its assessment of a reasonable fee award.

### 6.    Lodestar Reduction and Overall Determination

In summary of the above findings, the Court has reduced the number of hours claimed by Plaintiff by 28.4 hours for time spent litigating the summary judgment motion against the school district, 8 hours for preparation of subpoenas, and 6 hours for inadvertent duplication of deposition time. Thus, the total reduction is 42.4 hours from attorney Lappas' submitted fee petition total of 263.4 hours. The lodestar calculation, 221 hours times $280, yields a fee award of $61,880.00 Additionally, Plaintiff claims costs of $6,032.08, which this Court finds should be reduced by $888.65, resulting in a costs award of $5,143.43.

In cases where a prevailing party received only nominal damages, the most important factor for a court to consider in determining whether the fee award is reasonable is the degree of

the success obtained. <u>Farrar</u>, 506 U.S. at 114; <u>Hensley</u>, 461 U.S. at 440. As enumerated above, the Court finds that Plaintiff achieved an important, significant victory in this case. It was particularly difficult for Plaintiff to prove her case when the alleged perpetrator of the assault was absent from trial and the jury was unable to rely on his demeanor or associate his face and testimony with Plaintiff's accusations of sexual assault. Yet, despite her success and the difficulty of obtaining a verdict in her favor, it is clear that her victory was not a full one, in that she only achieved an award of nominal damages. <u>See</u> <u>Washington</u>, 898 F.3d at 1042 (emphasizing that the "damage amount is relevant not because of some ratio the court ought to maintain between damages and counsel fees. Rather, the reason has to do with the settled principle . . . that counsel fees should only be awarded to the extent that the litigant was successful."). More importantly, the lodestar amount in this case is not reasonable in consideration of the sole allegation of sexual assault raised by Plaintiff Whitman when Plaintiff B.H.'s claims involved extended allegations of abuse requiring more trial time and more witnesses to support them. While Plaintiff Whitman and Co-Plaintiff B.H.'s claims certainly were intertwined—both girls were students at the same high school and alleged sexual abuse against David Davies at or near the same time and same place—Plaintiff B.H.'s claims of abuse were more extensive and necessarily would have entailed more preparation and evidence to support them. At trial, for example, attorney Lappas introduced a series of photos depicting the multiple rooms at Forbes Road Junior/Senior High School; such a presentation surely involved significant preparation and organization which would not have been necessary to support the singular claim brought by Plaintiff Whitman. Thus the lodestar should be reduced to account not only for the incomplete victory, but also for time expended on Co-Plaintiff B.H.'s unsuccessful

claim. <u>See</u>, <u>McKenna</u>, 582 F.3d at 458 (affirming district court's reduction of the lodestar to approximate for the portion of time billed that was attributable to unsuccessful claims by using "information available to it to estimate a proper division of time").

In consideration of all the aforementioned facts, the Court reduces the fee award an additional twenty-five percent to achieve a fee award that is reasonable in light of the degree of success obtained by Plaintiff Whitman in this case, resulting in the reasonable attorney's fee award of $46,410.00 plus $5,143.43 in costs.

**III.      CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff Whitman, a prevailing party in her § 1983 litigation against Defendant Davies Estate, is entitled to a reasonable attorney's fees award of $46,410.00 plus $5,143.43 in costs. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAURIE HAINES and GARY HAINES,** | : | |
| **individually and as parents and natural** | : | |
| **guardians of B.H.,** | : | |
| **Plaintiffs** | : | **Civil Action No. 1:07-cv-00851** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **FORBES ROAD SCHOOL DISTRICT,** | : | |
| **and LISA DAVIES, as the** | : | |
| **Administratrix and Personal** | : | |
| **Representative of the Estate of David** | : | |
| **Davies,** | : | |
| **Defendants** | : | |
| | : | |
| **. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .** | : | |
| | : | |
| **PATIENCE WHITMAN,** | : | |
| **Plaintiff** | : | |
| | : | **Civil Action No. 1:07-cv-00852** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **FORBES ROAD SCHOOL DISTRICT,** | : | |
| **and LISA DAVIES, as the** | : | |
| **Administratrix and Personal** | : | |
| **Representative of the Estate of David** | : | |
| **Davies,** | : | |
| **Defendants** | | |

**ORDER**

**AND NOW,** this 4th day of January 2010, upon consideration of Plaintiff's motion for

attorney's fees (Doc. No. 147), **IT IS HEREBY ORDERED** that the motion is **DENIED IN**

**PART** and **GRANTED IN PART** as follows:

1. Attorney's fees will be awarded to Plaintiff Whitman in the amount of $46,410.00 plus

$5,143.43 in costs.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
